## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **STEVEN M. LARRABEE** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | **Civil Case No. 19-654 (RJL)** |
| **KENNETH J. BRAITHWAITE,** ) | |
| *in his official capacity as Secretary of* ) | |
| *the Navy*, ) | |
| ) | |
| and ) | |
| ) | |
| **UNITED STATES,** ) | |
| ) | |
| **Defendants.** ) | |

### <u>MEMORANDUM OPINION</u>

November **20**ᵗʰ, 2020 [Dkts. #22, #24]

This case presents a constitutional challenge to Article 2(a)(6) of the Uniform Code of Military Justice, which expands court-martial jurisdiction to include military retirees in the Fleet Marine Corps Reserve for offenses committed after their retirement from active-duty service.  Plaintiff Steven M. Larrabee ("plaintiff") brought suit against Kenneth J. Braithwaite, the Secretary of the Navy, and the United States (collectively, "defendants" or "the Government") to challenge his conviction by court-martial for sexual assault committed after he retired from the U.S. Marine Corps and was transferred to the Fleet Marine Corps Reserve.  Before the Court are plaintiff's Motion for Judgment on the Pleadings [Dkt. #22] and defendants' Motion for Judgment on the Pleadings [Dkt. #24].  Upon consideration of the pleadings, relevant law, and the entire record herein, the Court

concludes that Congress's expansion of court-martial jurisdiction over retirees who are members of the Fleet Marine Corps Reserve is unconstitutional. Accordingly, the Court will GRANT plaintiff's motion and DENY defendants' motion.

## BACKGROUND

The basic facts in this case are not in dispute. Plaintiff Steven M. Larrabee served in the U.S. Marine Corps for 20 years from 1994 to 2015. *See* Compl. ¶ 13 [Dkt. #1]. He was stationed at Marine Corps Air Station Iwakuni in Japan from 2012 to 2014. On August 1, 2015, he retired from the Marine Corps as a staff sergeant and was transferred at his request to the Fleet Marine Corps Reserve. Compl. ¶¶ 4, 13; Answer ¶ 13 [Dkt. #21].

The Fleet Marine Corps Reserve is *not* a "reserve component" of the military. *See* 10 U.S.C. § 10101. It is instead composed of retired active-duty servicemembers. Compl. ¶ 14; Answer ¶ 14. Congress has designated the Fleet Marine Corps Reserve as a component of the Marine Corps. 10 U.S.C. § 8001(a)(2). Active-duty servicemembers of the Marine Corps who have served for at least 20 years may choose to be transferred to the Fleet Marine Corps Reserve rather than being discharged entirely from the military. *See id.* § 8330(b). Members of the Fleet Marine Corps Reserve receive what is referred to as "retainer pay" even though they are not on active duty. *See id.* § 8330(c)(1).[1] They may, however, be ordered to active duty in times of war or national emergency or as otherwise

---

[1] Moreover, active-duty servicemembers of the Marine Corps who have served for at least 30 years may be granted "retired" status. *See* 10 U.S.C. § 8326(a). Individuals in retired status receive "retired pay" while not on active duty. *See id.* § 8326(c)(2). There is not any material difference between "retainer pay" for members of the Fleet Marine Corps Reserve and "retired pay" for individuals in retired status.

authorized by law. *See id.* § 8385(a). Additionally, they may be required during peacetime to perform two months of active-duty training every four years. *See id.* § 8385(b).

After his retirement from the Marine Corps and transfer to the Fleet Marine Corps Reserve, plaintiff began managing two local bars in Iwakuni, Japan. *See United States v. Larrabee*, No. 201700075, 2017 WL 5712245, at *1 (N-M. Ct. Crim. App. Nov. 28, 2017). On November 15, 2015, plaintiff sexually assaulted a bartender at one of these bars and recorded the assault on his cell phone. *See id.* On November 3, 2016, plaintiff was convicted by a general court-martial of one specification of sexual assault and one specification of indecent recording, in violation of the Uniform Code of Military Justice ("UCMJ"). Compl. ¶ 19; Answer ¶ 19. He was sentenced to eight years of confinement, a reprimand, and a dishonorable discharge from the military. Compl. ¶ 23; Answer ¶ 23. However, the officer who was the convening authority disapproved the reprimand and suspended all but ten months of his confinement. Compl. ¶ 24; Answer ¶ 24.

Plaintiff first appealed his court-martial conviction to the U.S. Navy-Marine Corps Court of Criminal Appeals ("CCA") in part on the basis that his court-martial was unconstitutional because he had retired from the military and was no longer subject to court-martial jurisdiction. Compl. ¶¶ 25–27; Answer ¶¶ 25–27; *see Larrabee*, 2017 WL 5712245, at *1. However, on November 28, 2017, the CCA affirmed the findings and sentence of the court-martial, relying primarily on the CCA's holding in *United States v. Dinger,* 76 M.J. 552 (N-M. Ct. Crim. App. 2017). *See Larrabee*, 2017 WL 5712245, at *1 n.1. In *Dinger*, the CCA "call[ed] upon first principles" and concluded that military retirees can constitutionally be subject to court-martial jurisdiction. 76 M.J. at 557. The CCA

reasoned that because a retired servicemember may still be recalled to active-duty service at any time, *id.* at 556–57, Congress has a "continued interest in enforcing good order and discipline amongst those in a retired status," *id.* at 557.

Plaintiff then sought discretionary review of the CCA's ruling from the U.S. Court of Appeals for the Armed Forces ("CAAF").  Compl. ¶ 30; Answer ¶ 30.  However, the CAAF summarily affirmed the CCA's decision on this issue based on its own affirmance of the CCA's decision in *Dinger*.  *United States v. Larrabee*, 78 M.J. 107, 107 (C.A.A.F. 2018); *see United States v. Dinger*, 77 M.J. 447 (C.A.A.F. 2018).  Plaintiff then filed a petition for a writ of certiorari to the Supreme Court, but his petition was denied.  Compl. ¶¶ 34, 38; Answer ¶¶ 34, 38; *Larrabee v. United States*, 139 S. Ct. 1164 (2019).

On March 7, 2019, plaintiff filed suit in this Court, mounting a collateral challenge to the constitutionality of the provision of the Uniform Code of Military Justice, 10 U.S.C. § 802(a)(6), that authorizes the court-martial of military retirees in the Fleet Marine Corps Reserve.  *See* Compl. ¶¶ 1–50.  Plaintiff alleges that members of the Fleet Marine Corps Reserve are *not* part of the "land and naval forces" subject to Congress's Article I power to "make rules" and therefore cannot constitutionally be subject to trial by court-martial. *Id.* ¶ 43.  Plaintiff also alleges that his trial by court-martial violated his constitutional rights to an impartial judge, to indictment by a grand jury, and to trial by an impartial and randomly selected jury of his peers by a unanimous verdict.  *Id.* ¶ 46.

On May 14, 2019, the Government moved to dismiss the complaint for lack of venue and failure to state a claim.  Defs.' Mot. to Dismiss [Dkt. #10].  On May 20, 2019, plaintiff opposed the motion to dismiss and moved for judgment on the pleadings.  Pl.'s Mot. for J.

4

on Pleadings & Opp'n to Defs.' Mot. to Dismiss [Dkt. #13]. At a hearing on February 25, 2020, I denied the Government's motion to dismiss the case, but concluded that plaintiff's motion for judgment on the pleadings was premature. *See* 2/25/2020 Min. Entry.[2] After the hearing, the Government filed an answer and the parties briefed cross-motions for judgment on the pleadings. *See* Pl.'s Renewed Mot. for J. on Pleadings ("Pl.'s Mot.") [Dkt. #22]; Defs.' Mot. for J. on Pleadings ("Defs.' Mot.") [Dkt. #24]. I heard oral argument on these cross-motions on November 6, 2020. *See* 11/6/2020 Min. Entry.

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). A motion under Rule 12(c) is "functionally equivalent to a Rule 12(b)(6) motion [to dismiss for failure to state a claim]." *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 130 (D.C. Cir. 2012). To decide a motion under Rule 12(c), "courts employ the same standard that governs a Rule 12(b)(6) motion to dismiss." *Lockhart v. Coastal Int'l Sec., Inc.*, 905 F. Supp. 2d 105, 114 (D.D.C. 2012) (quoting *Lans v. Adduci Mastriani & Schaumberg L.L.P.*, 786 F. Supp. 2d 240, 265 (D.D.C. 2011)). Specifically, the Court may grant judgment on the pleadings "if the moving party demonstrates that no material fact is in dispute and that it is entitled to judgment as a matter of law." *Schuler v. PricewaterhouseCoopers, LLP*, 514 F.3d 1365, 1370 (D.C. Cir. 2008) (quoting *Peters v.*

---

[2] Venue is proper under 28 U.S.C. § 1391(e)(1)(A), as the Secretary of the Navy performs a significant amount of his official duties in the District of Columbia. *Smith v. Dalton*, 927 F. Supp. 1, 6 (D.D.C. 1996); *Vince v. Mabus*, 956 F. Supp. 2d 83, 88 (D.D.C. 2013).

*Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1485 (D.C. Cir. 1992)).  In such a case, the court "may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice." *Abhe v. Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007) (quoting *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006)).  The parties agree that there are no material factual disputes and that this case turns only on questions of law.  *See* Pl.'s Mot. at 9; Defs.' Mot. at 5–11.

The parties disagree, however, as to the relevant standard of judicial review.  The Government contends that a court's review of court-martial proceedings must be "both searching and deferential." Defs.' Mot. at 10.  Meanwhile, plaintiff argues that because he challenges the court-martial's exercise of jurisdiction as a constitutional matter, review must be *de novo*.  Pl.'s Mot. at 13–14 & n.8.  It is well accepted that "federal courts have jurisdiction to review the validity of court-martial proceedings brought by non-custodial plaintiffs who cannot bring habeas suits." *Sanford v. United States*, 586 F.3d 28, 32 (D.C. Cir. 2009) (emphasis omitted).  To grant relief to a non-custodial plaintiff, "the military court judgment must be 'void,' meaning the error must be fundamental." *Id.* (citations omitted).  Whether a court-martial judgment may be deemed "void" depends on "the nature of the alleged defect" and "the gravity of the harm from which relief is sought." *Id.* (quoting *Schlesinger v. Councilman*, 420 U.S. 738, 753 (1975)).  "Jurisdictional errors are, of course, fundamental." *Stanton v. Jacobson*, No. 19-cv-699, 2020 WL 1668039, at *3 (D.D.C. Apr. 3, 2020).  The permissible scope of court-martial jurisdiction is a "structural question" under the Constitution that is subject to *de novo* review by this Court. *See Al*

*Bahlul v. United States*, 840 F.3d 757, 760 n.1 (D.C. Cir. 2016) (en banc) (Kavanaugh, J.,

concurring) (applying *de novo* review to question of whether military commissions could

constitutionally try certain types of offenses).  Where a non-custodial plaintiff raises a

defect in jurisdiction so fundamental as to affect a court-martial's authority to try him at

all, that claim must be reviewed *de novo*.  *See United States ex rel. Toth v. Quarles*, 350

U.S. 11, 13–23 (1955) (applying no form of deference to court-martial's determination of

its own jurisdiction).

## ANALYSIS

Experience has clearly demonstrated the baseline proposition that court-martial

jurisdiction *must* be narrowly limited.  The Supreme Court itself has instructed time and

time again that "the scope of the constitutional power of Congress to authorize trial by

court-martial" must be "limit[ed] to 'the least possible power adequate to the end

proposed.'" *Toth*, 350 U.S. at 23 (quoting *Anderson v. Dunn*, 19 U.S. (6 Wheat.) 204, 230–

31 (1821)).  Indeed, trial by court-martial "was intended to be only a narrow exception to

the normal and preferred method of trial in courts of law." *Reid v. Covert*, 354 U.S. 1, 21

(1957).  In the final analysis, "[e]very extension" of court-martial jurisdiction "is an

encroachment on the jurisdiction of the civil courts" and "acts as a deprivation of the right

to jury trial and of other treasured constitutional protections." *Id.*; *accord Toth*, 350 U.S.

at 15 ("any expansion of court-martial jurisdiction . . . necessarily encroaches on the

jurisdiction of federal courts set up under Article III of the Constitution where persons on

trial are surrounded with more constitutional safeguards than in military tribunals").

The Constitution created a delicate balance between the military's need to preserve good order and discipline, on the one hand, and an individual's right to due process when accused of crimes, on the other. In Article I, section 8 of the Constitution, the Founders vested Congress with the power to "make Rules for the Government and Regulation of the land and naval Forces" as well as the power to "make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers." U.S. Const., art. I, § 8, cls. 14, 18. However, in Article III of the Constitution, the Founders guaranteed that individuals accused of crimes have the right to a trial "by Jury" that is "held in the State where the said Crimes shall have been committed," U.S. Const., art. III, § 2, and that is overseen by a judge who shall hold his or her office "during good Behavior" and shall receive compensation that shall not be diminished, U.S. Const., art. III, § 1. Moreover, the Fifth Amendment to the Constitution established that no individual "shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces." U.S. Const., amend. V. Finally, the Sixth Amendment to the Constitution guarantees individuals the "right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence." U.S. Const., amend. VI.

Of course, the Uniform Code of Military Justice has come to provide the accused in a court-martial with many of the procedures and rights he would have otherwise had in a

8

civilian criminal court.[3]  The UCMJ grants an accused "the right to be represented in his defense" and compulsory process to obtain testimony of witnesses on his behalf.  *See* 10 U.S.C. §§ 838(b), 846.  It also prohibits the compulsion of self-incrimination, double jeopardy, and cruel or unusual punishments.  *See id.* §§ 831, 844, 855.  However, the UCMJ's protections provide much less comfort to the accused than constitutionally guaranteed rights do because either Congress or the Court of Military Appeals could potentially amend the UCMJ at any time to remove or limit certain procedures or rights.[4] In *Reid*, Justice Black warned that "[t]raditionally, military justice has been a rough form of justice, emphasizing summary procedures, speedy convictions and stern penalties." 354 U.S. at 35–36.  Even with "strides . . . made toward making courts-martial less subject to the will of the executive department," "military tribunals have not been and probably never can be constituted in such way that they can have the same kind of qualifications that the Constitution has deemed essential to fair trials of civilians in federal courts." *Toth*, 350 U.S. at 17.  For that reason, it is all the more important to consider whether a Congressional expansion of court-martial jurisdiction to military retirees is indeed "the least possible power adequate to the end proposed." *Id.* at 23.

     In evaluating the proper scope of court-martial jurisdiction, the Supreme Court has instructed that the relevant test is "one of status, namely, whether the accused in the court-

---

[3] *See* Joseph W. Bishop, Jr., *Court-Martial Jurisdiction Over Military-Civilian Hybrids: Retired Regulars, Reservists, and Discharged Prisoners*, 112 U. Penn. L. Rev. 317, 320 (1964).

[4] *See Middendorf v. Henry*, 425 U.S. 25, 48 (1976) (military not required under Fifth or Sixth Amendments to provide accused servicemember with right to counsel at summary court-martial). *See generally* Frederick Bernays Wiener, *Courts-Martial and the Bill of Rights: The Original Practice*, 72 Harv. L. Rev. 1, 266 (1958).

martial proceeding is a person who can be regarded as falling within the term 'land and naval Forces.'" *Kinsella v. United States ex rel. Singleton*, 361 U.S. 234, 240–41 (1960). To answer this question, the Supreme Court has looked to whether "certain overriding demands of discipline" necessitate court-martial jurisdiction over a certain class of individuals. *Solorio v. United States*, 483 U.S. 435, 440 (1987) (quoting *Burns v. Wilson*, 346 U.S. 137, 140 (1953) (plurality opinion)).  Obviously, the parties here agree that Congress provided court-martial jurisdiction in the UCMJ over members of the Fleet Marine Corps Reserve and other military retirees. *See* 10 U.S.C. § 802(a)(4), (6); *see also* Pl.'s Mot. at 10 n.4; Defs.' Mot. at 4.  They disagree, however, over whether Congress *can* constitutionally subject such military retirees to court-martial jurisdiction.

The Government argues that because Congress has determined military retirees are part of the "land and naval forces" and subjected them to court-martial jurisdiction, they must be so, *ipso facto*. *See* Defs.' Mot. at 13.  The Government relies on the Supreme Court's decision in *Solorio*, which deferred to Congress's judgment in holding that a servicemember can be tried by court-martial for an offense committed on his own time in the civilian community that has no connection to his military service, 483 U.S. at 446–47. In *Solorio*, the Court explained that "the scope of court-martial jurisdiction over offenses committed by servicemen was a matter reserved for Congress." *Id.* at 440.  As the Court recognized, "Congress has primary responsibility for the delicate task of balancing the rights of servicemen against the needs of the military," so courts should "adhere[] to this principle of deference" when "the constitutional rights of servicemen [a]re implicated." *Id.* at 447–48.  It is beyond question that courts should not second guess the policy judgment

of Congress to extend court-martial jurisdiction to offenses by individuals who plainly fall within the "land and naval forces," as the plaintiff in *Solorio* did.  However, the Supreme Court has *never* implied, much less held, that courts have *no* role in determining whether the individuals whom Congress has subjected to court-martial jurisdiction actually fall within the ordinary meaning of the "land and naval forces" in the Constitution.  *See McElroy v. United States ex rel. Guagliardo*, 361 U.S. 281, 286 (1960) (holding that court-martial cannot try civilian employees of overseas military forces); *Singleton*, 361 U.S. 234 (holding that court-martial cannot try civilian dependents of military personnel); *Toth*, 350 U.S. 11 (holding that court-martial cannot try discharged servicemembers).

Even though trial by military court-martial "was intended to be only a narrow exception to the normal and preferred method of trial in courts of law," *Reid*, 354 U.S. at 21, Congress has nonetheless steadily expanded the scope of court-martial jurisdiction over time.  At common law, court-martial jurisdiction extended only to regular soldiers (excluding even the militia forces), and only for the offenses of mutiny, sedition, and desertion.  *See* Mutiny Act of 1689, 1 Wm. & Mary, chs. 2, 5, 7.  The original Articles of War in the United States included primarily violations of military law such as desertion, mutiny, cowardice, and insubordination.[5]  It was not until the Civil War that Congress extended court-martial jurisdiction to include any traditionally civilian offenses.  *See* Act of March 3, 1863, ch. 75, § 30, 12 Stat. 731, 736.  The rationale for this extension of jurisdiction to major felonies such as murder, manslaughter, arson, burglary, and rape was

---

[5] *See* Bishop, *supra* note 3, at 325–26.  *See generally* William Winthrop, *Military Law & Precedents* (2d ed. 1920).

that such offenses commonly occurred in the theatre of war and that "the swift and summary justice of a military court was deemed necessary to restrain their commission." *Coleman v. Tennessee*, 97 U.S. 509, 513 (1878).   Then, in 1950, Congress passed the Uniform Code of Military Justice, which extended court-martial jurisdiction not only to current members of the uniformed services of the United States, but also to "[r]etired members of a regular component of the armed forces" and "[m]embers of the Fleet Reserve and Fleet Marine Corps Reserve."   10 U.S.C. § 802(a)(4), (6).   To date, the Government has consistently cited two primary factors as justifying court-martial jurisdiction over military retirees: their receipt of retainer pay and their ability to be recalled to active-duty service.   *See* Defs.' Mot. at 14–24.   Neither factor, however, suffices to demonstrate why military retirees *plainly* fall within the "land and naval forces" or why subjecting them to court-martial jurisdiction is *necessary* to maintain good order and discipline.

First, military retirees' receipt of retainer pay does *not* suffice to subject them to court-martial jurisdiction.   Under 10 U.S.C. § 8330(c)(1), members of the Fleet Marine Corps Reserve receive retainer pay when *not* on active duty.   The Government's position rests on the longstanding, but largely inaccurate, assumption that this retainer pay represents reduced compensation for current part-time services.   In 1881, the Supreme Court concluded that retainer or retired pay was "compensation . . . continued at a reduced rate" and held that the retiree plaintiff was entitled to the statutory increase of ten percent in his pay.   *United States v. Tyler*, 105 U.S. 244, 244–45 (1881).   Based on this analysis, the military court system concluded that it could try military retirees by court-martial because such retirees are paid to remain available for future active-duty service.   *See, e.g.*,

12

*United States v. Hooper*, 26 C.M.R. 417, 425 (C.M.A. 1958) ("Certainly, one . . . who receives a salary to assure his availability[] is a part of the land or naval forces."). However, this assumption is both inaccurate and irrelevant. How so?

The Supreme Court reversed course from *Tyler* in 1992 when it determined that for purposes of tax treatment, military retirement benefits actually represent *deferred* pay for past services. *Barker v. Kansas*, 503 U.S. 594, 605 (1992). In *Barker*, the Supreme Court addressed Kansas's practice of taxing the benefits that military retirees receive from the federal government but not taxing the benefits that retired government employees receive from state and local governments. *Id.* at 596. The Court concluded that "military retirement benefits are to be considered deferred pay for past services," rather than "current compensation for reduced current services." *Id.* at 605. In reaching this conclusion, the Court emphasized that "[t]he amount of retired pay a service member receives is calculated not on the basis of the continuing duties he actually performs, but on the basis of years served on active duty and the rank obtained prior to retirement." *Id.* at 599; *see also* 10 U.S.C. § 8330(c)(1).[6] Undaunted, the Government emphasizes the *Barker* Court's factual statement that "[m]ilitary retirees unquestionably remain in the service and are subject to restrictions and recall," *see* 503 U.S. at 599, 600 n.4;[7] Defs.' Mot. at 13, 16, as if that magically proves the Government's point. Not so. While neither party disputes that the

---

[6] The Court does not go so far as to adopt plaintiff's position that retainer or retired pay is "tantamount to a pension" for all purposes. Pl.'s Mot. at 19.
[7] The Supreme Court has expressed similar notions in *dicta* in other cases. *See McCarty v. McCarty*, 453 U.S. 210, 221–22 (1981) ("The retired officer remains a member of the Army . . . and continues to be subject to the Uniform Code of Military Justice." (citation omitted)); *Kahn v. Anderson*, 255 U.S. 1, 6–7 (1921) ("[I]t is not open to question, . . . that [retired] officers are officers in the military service of the United States . . . .").

UCMJ extends court-martial jurisdiction to military retirees, or that military retirees are subject to potential recall, the Supreme Court has never squarely addressed a constitutional challenge to the exercise of court-martial jurisdiction over military retirees.[8]

Additionally, receipt of military retirement benefits has never been enough, by itself, to subject a class of individuals to court-martial jurisdiction. In *Reid*, the Supreme Court rejected the Government's position that civilian dependents of servicemembers who received military benefits were therefore part of the "land and naval Forces" and subject to court-martial jurisdiction. *See* 354 U.S. at 23; *see also Singleton*, 361 U.S. 234. Similarly, the Supreme Court has rejected Congress's extension of court-martial jurisdiction to civilian employees of the military despite their receipt of a salary from the military. *See Guagliardo*, 361 U.S. at 286; *Grisham v. Hagan*, 361 U.S. 278, 280 (1960).

The Government also contends that individuals who join the Fleet Marine Corps Reserve, rather than being discharged from the military, are thereby consenting to continued court-martial jurisdiction. Defs.' Mot. at 17–18. I disagree. It is true, of course, that individuals who are discharged from the military entirely are no longer subject to court-martial jurisdiction, either statutorily or constitutionally. *See* 10 U.S.C. § 802(a); *Toth*, 350 U.S. at 13, 23. That fact, however, does not mean that individuals who choose to not be discharged but to be transferred to either the Fleet Marine Corps Reserve or the

---

[8] The lack of any Supreme Court case addressing the question is likely due in part to the fact that in the 70-year period since the UCMJ explicitly authorized such jurisdiction, the military has so rarely chosen to exercise it. *See* Bishop, *supra* note 3, at 332; J. Mackey Ives & Michael J. Davidson, *Court-Martial Jurisdiction Over Retirees Under Articles 2(4) and 2(6): Time to Lighten Up and Tighten Up?*, 175 Mil. L. Rev. 1, 11 (2003).

retired list necessarily do, or even could, "consent" to an otherwise unconstitutional exercise of jurisdiction over them.

Second, the possibility of recall to active-duty service does not suffice to subject military retirees to court-martial jurisdiction. Indeed, the Supreme Court itself emphasized early in its jurisprudence regarding court-martial jurisdiction that the right to trial by jury— "one of the most valuable in a free country—is preserved to every one accused of [a] crime who is not attached to the army, or navy, or militia in actual service." *Ex parte Milligan*, 71 U.S. (4 Wall.) 2, 122–23 (1866). Yet despite that instruction, Congress has steadily expanded court-martial jurisdiction over time, reaching its current scope in 1950 when it explicitly included retirees in the Fleet Marine Corps Reserve and individuals on retirement lists who are not in active-duty service or on active-duty training. *See* 10 U.S.C. § 802(a)(4), (6). The Government not surprisingly contends that the mere *possibility* of recall to active-duty service suffices to subject military retirees to court-martial jurisdiction. Defs.' Mot. at 18–24. While it is, of course, impossible to foresee national emergencies and the extent of personnel needed to address them, the Government simply preaches judicial deference to Congress regarding jurisdiction over military retirees, *id.* at 19–20, notwithstanding plaintiff's point that the likelihood of recall is "anachronistic." Pl.'s Mot. at 21–23. Indeed, plaintiff claims, and the Government does not dispute, that "[s]ince Vietnam, if not earlier, the reserve components, rather than the services' retired lists—have been the mechanism for augmenting the active-duty force." Pl.'s Mot. at 21 (citing Library of Congress, *Historical Attempts to Reorganize the Reserve Components* 15–17 (2007)).

While both sides are correct in some ways, the bottom line remains the same: military retirees are highly unlikely to be recalled, even though their service may be necessary in some future national emergency. This disagreement, however, loses sight of the ultimate question: whether the Government has adequately demonstrated that court-martial jurisdiction over military retirees is necessary to maintain good order and discipline. *See Toth*, 350 U.S. at 22 ("Free countries of the world have tried to restrict military tribunals to the narrowest jurisdiction deemed absolutely essential to maintaining discipline among troops in active service."). Indeed, Congress's current treatment of inactive members of the Reserve components calls into question whether court-martial jurisdiction over military retirees is actually necessary to such end. Under Article 2(a) of the UCMJ, members of the Reserve components are subject to court-martial jurisdiction *only* while serving on their regular active-duty periods and while on inactive-duty training, but *not* when in inactive status. *See* 10 U.S.C. § 802(a)(3). Because military retirees are much less likely to be recalled to active-duty service than Reservists are, the distinction in whether these two similar groups are subject to court-martial jurisdiction seems arbitrary at best. Indeed, under the current regime, a retired member of the Army and an inactive member of the Army Reserve who get into a bar brawl would face two entirely different systems of justice: the Army retiree could be hauled before a court-martial and tried by a military judge and active military officers, whereas the Army Reservist would be entitled to indictment by a grand jury and trial by a civilian jury of his peers overseen by an impartial judge. Please!

The Government counters that this distinction reflects only "Congress's evaluation of policy considerations specific to reserve service, not a constitutional limitation on Congress's Article I power." Defs.' Mot. at 22 n.13.  However, because Congress's Article I power to extend court-martial jurisdiction must be limited to that necessary for good order and discipline, a policy distinction that calls into question the necessity of court-martial jurisdiction for military retirees (as Congress clearly determined such jurisdiction *unnecessary* for Reservists) surely must be considered in the constitutional analysis. Moreover, the current scope of court-martial jurisdiction disregards the obvious fact that some military retirees face virtually no prospect of recall to military service at all, whether because of their age, physical condition, or disability.  *See* DoD Instruction 1352.01, ¶ 3.2(g)(2) (2016) (limiting recall of "Category III retirees"—those who are retired due to disability or who are over 60 years of age—to civilian defense jobs).  Further, the Government readily acknowledges that, absent court-martial jurisdiction, military retirees who face state or federal criminal prosecution for offenses committed after retirement could still be administratively separated from the service. *See* 11/6/2020 Hrg. Tr.

To say the least, it is difficult to square these distinctions with the demands of good order and discipline that are the principal objectives of their military's court-martial jurisdiction.  To be clear, I am not concluding today that Congress could never authorize the court-martial of some military retirees, but merely that Congress has not shown on the current record why the exercise of such jurisdiction over all military retirees is necessary to good order and discipline.  Indeed, the Government points to no clear statements by members of Congress upon passing the Uniform Code of Military Justice that explain the

necessity of subjecting all military retirees to court-martial jurisdiction.[9]  Because the Supreme Court has consistently emphasized that court-martial jurisdiction should be narrowly circumscribed, *e.g.*, *Toth*, 350 U.S. at 23, I must conclude that in the absence of a principled basis promoting good order and discipline, Congress's present exercise of court-martial jurisdiction over all members of the Fleet Marine Corps Reserve is unconstitutional.

## CONCLUSION

For all the foregoing reasons, plaintiff's Motion for Judgment on the Pleadings [Dkt. #22] is GRANTED and defendants' Motion for Judgment on the Pleadings [Dkt. #24] is DENIED.  A separate Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

[9] The Government's citation to President Woodrow Wilson's message upon vetoing a measure in an appropriations bill that would terminate court-martial jurisdiction over military retirees is hardly compelling.  *See* Defs.' Mot. at 21 & n.12.  President Wilson stated that "[o]fficers on the retired list are . . . members of the Military Establishment distinguished by their long service, and, as such, examples of discipline to the officers and men in the active [military]."  53 Cong. Rec. 12,844, 12,844–45 (1916).  First, such an Executive message is not entitled to any of the weight to which statements by members of Congress in legislative history might be.  And second, it is not clear why President Wilson's logic would not apply equally to Reservists, yet Congress chose to exclude them from court-martial jurisdiction while they are in inactive status.